STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20 CVS 1689

LOGAN DERNOSHEK, on behalf of
himself and all others similarly situated,

     Plaintiff,

v.

FIRSTSERVICE RESIDENTIAL, INC;
FIRSTSERVICE RESIDENTIAL
CAROLINAS, INC.; and NEXTLEVEL
ASSOCIATION SOLUTIONS, INC. d/b/a
HOMEWISEDOCS.COM,

     Defendants.

**AMENDED CLASS ACTION
COMPLAINT**
Jury Trial Demanded

## Nature of the Action

1.     This action involves unlawful and unreasonable charges of real estate "transfer fees" by Defendants FirstService Residential, Inc. and FirstService Residential Carolinas, Inc. (collectively, "FirstService") and NextLevel Association Solutions, Inc. ("HomeWise") (collectively, "Defendants").

2.     Together, Defendants systematically and unlawfully charge exorbitant "transfer fees" in the hundreds of dollars to sellers of residential real estate properties in order for the ability to sell their homes.

3.     In particular, Defendants charge the transferor (e.g., the seller) of real property a "transfer fee" to provide a statement of unpaid assessments as well as for services that exclusively benefit the transferee (e.g., the buyer).

4. A statement of unpaid assessments certifies the amount that the selling homeowner owes in home owners associations ("HOAs") or condo owners associations ("COAs") (collectively, "OAs") assessments.

5. For all practical purposes, a homeowner whose home is part of an OA cannot sell the home without a statement of unpaid assessments.

6. For example, a title insurance company will not certify the seller's title is free and clear of any liens or other encumbrances, and the closing cannot occur.

7. Defendants charge unreasonably high fees in order to provide statements of unpaid assessments, and represent or cause to represent to homeowners that the unreasonably high fees are legally "due" from them.

8. However, Defendants have no legal basis to charge unreasonably high fees for statements of unpaid assessments.

9. In essence and as discussed herein, Defendants merely make an arbitrary decision as to what to charge homeowners, claim the amount is legally "due", and collect payment.

10. Plaintiff initiated this action to recover all unlawful "transfer fees" as well as all other statutory damages, penalties, and amounts he and all other similarly situated individuals are entitled to as a result of Defendants' unlawful activity.

## Parties

11. Logan Dernoshek is currently a citizen and resident of Kannapolis, North Carolina, in Cabarrus County.

2

12.    On February 4, 2020, Plaintiff sold a home located at 209 Lincoln St., Charlotte, North Carolina.

13.    In order to sell his home, Plaintiff was charged $284 by FirstService, the property management company that worked with the HOA, and $33.00 by HomeWise.

14.    FirstService's fee includes a $169.00 charge for a "Resale Demand", a $50.00 charge for "Account Setup Fee", and a $65.00 "Rush Fee".

15.    FirstService charged the above fees to Plaintiff for the simple confirmation that he was current on the payment of his assessments to the HOA at the time of the sale of his property.

16.    FirstService Residential, Inc., is a corporation organized under the laws of Delaware, with its principal office in Dania Beach, Florida.

17.    FirstService Residential Carolinas, Inc., is a corporation organized under the laws of North Carolina, with its principal office in Charlotte, North Carolina.

18.    FirstService Residential, Inc., and FirstService Residential Carolinas, Inc., are both subsidiaries of FirstService Corporation, and operate under the "FirstService" name to provide property management services to OAs in North Carolina.

19.    Upon information and belief, with respect to all actions and decisions to this action, First Service has operated as a single entity, including in the

3

development and enforcement of policies related to property management and the Resale Fees.

20.     Upon information and belief, at all times pertinent to this action, the finances, policies, and business practices of First Service are and were dominated and controlled by one another in such a manner that each individual defendant has no separate mind, will, identity, or existence of its own and instead operated as mere instrumentalities and alter egos of one another.

21.     Upon information and belief, First Service are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the alter ego of the other, in that, among others:

    a.     First Service operates and hold themselves out to the public[1] as a single entity known as "FirstService" or "FirstService Residential";

---

[1] See e.g. https://www.fsresidential.com/corporate/about-fsr/overview (last visited October 5, 2020) ("As the leading residential property management company in North America, we work hard to help your community thrive. Our dedication, responsiveness and integrity are why thousands of communities across the U.S. and Canada choose FirstService Residential to manage their properties."); https://www.fsresidential.com/north-carolina/news-and-events/press-releases/dennis-abbott-firstservice-residential-president (last visited October 5, 2020) (describing current president of FirstService Residential Carolinas, Inc. Dennis Abbott as "the President of the North and South Carolina region for FirstService Residential, the leading property management company in North America."); https://www.prweb.com/releases/firstservice_residential_welcomes_the_preserve_at_little_pine_association_to_its_north_carolina_management_portfolio/prweb162800 28.htm (last visited October 5, 2020) (referring to a North Carolina property being managed by "FirstService Residential".)

4

b. With respect to all actions and decisions in North Carolina pertinent to this action, First Service has operated as a single entity known as "FirstService" or "FirstService Residential";[2]

c. First Service operates and hold themselves out to the public in such a way that members of the public would be unable to identify and distinguish between one "FirstService" or "FirstService Residential" entity and another;[3] and

d. First Service share corporate officers with one another.[4]

22. Any such conduct in violation of North Carolina law by one FirstService defendant should be imputed to each other FirstService defendant.

23. NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs.com is a corporation organized under the laws of the state of California, with its principal office in Fairfield, Connecticut.

24. HomeWise provides Internet-accessible software based on automated processing systems that enable property managers, including FirstService, to provide data and documents for real estate transactions.

---

[2]

[3] *See, e.g.,* https://www.fsresidential.com/corporate/what-we-do/property-management (last visited October 5, 2020) ("By maintaining local teams of professionals, FirstService Residential is able to offer the highest level of personal attention and responsiveness to your community residents. Our professionals live in the same geographic area as the communities they manage.")

[4] *See, e.g.,* https://www.prweb.com/releases/firstservice_residential_welcomes_the_preserve_at_little_pine_association_to_its_north_carolina_management_portfolio/prweb16280028.htm (describing President of FirstService Residential Carolinas, Inc. Dennis Abbott as "market president, FirstService Residential.")

25. HomeWise charges a $33.00 fee, composed of a $23.00 "Resale Demand" and a $10.00 "Rush Fee". HomeWise charges homeowners for identical or substantially similar work as FirstService.

26. The fees charged by FirstService and HomeWise are collectively referred to as Resale Fees.

## Venue & Jurisdiction

27. The subject matter jurisdiction over this cause and personal jurisdiction are conferred upon and vested in this Court under and by virtue of G.S. §§ 1-75.4, 7A-240, and 7A-243.

28. Venue for this cause is properly laid in this Court pursuant to and in accordance with G.S. § 1-82.

## The Role of Property Management Companies for OA Properties

29. OAs routinely enter into agreements with property management companies, like FirstService, to perform various services to the OAs.

30. Those services include responsibilities such as: vendor hiring and management; cleaning and maintenance of amenities and common areas; preparation of budgets and guided advice for financial planning; regular inspection of properties to monitor and enforce compliance with community covenants; quarterly education for board members; and collection and tracking of assessment payments.

6

31.   FirstService promotes its "Full-Service Professional Property Management Services for Residential Communities"[5] by emphasizing that the communities they manage "can take advantage of lower rates or greater value on a variety of products and services".[6]

32.   FirstService boasts that its "team of more than 16,000 associates in the U.S. and Canada includes the industry's top talent – unrivaled in experience, innovation and dedication to service."[7] This unified team was organized by enveloping existing companies under the FirstService banner.[8]

33.   In particular, FirstService touts its abilities to manage OAs' assessment and collection policies.

34.   To manage OAs' assessment and collection policies, FirstService utilizes software to track the collection of OAs' assessments.

35.   FirstService generates reports that reflect the status of unpaid assessments. The unpaid assessment statements will either list an amount owed or reflect a zero balance.

---

[5] https://www.fsresidential.com/corporate/what-we-do/property-management (last visited May 29, 2020)

[6] https://www.fsresidential.com/corporate/about-fsr/overview (last visited May 29, 2020).

[7] *Id.*

[8] *See, e.g.*, https://www.fsresidential.com/new-jersey/about-fsr/background ("In June 2013, we experienced another major milestone when our parent company unified *all* of its management companies under the FirstResidential brand...The rebranding enhances the visibility of our affiliation with the FirstService Residential family and *enables us to better leverage our organization's shared resources, best practices, and collective buying power*...") (emphasis added)

7

36.     Because of its regular tracking of assessment payments, the process of generating unpaid assessment statements is very simple and inexpensive for FirstService. Upon information and belief, obtaining a statement of unpaid assessments merely requires a handful of keystrokes, and approximately five .minutes or less of an employee's time. After a handful of keystrokes and five minutes or less of time, FirstService's software produces a statement of unpaid assessments.

### The Role of HomeWise

37.     FirstService is able to provide a statement of unpaid assessments so easily primarily because of HomeWise.

38.     HomeWise developed and owns internet-accessible software that enables users (which are typically property management companies such as FirstService) to electronically store OA governing documents, and to track the collection of assessments and other related information.

39.     HomeWise enters into service agreements with property management companies, like FirstService, for the use of HomeWise's software.

40.     HomeWise prides itself on delivering services that provide "efficiency and responsiveness" to property managers.[9]

41.     Defendants require that requests for statements of unpaid assessments be routed first through HomeWise.

---

[9] *See* https://www.homewisedocs.com/solutions/owners-and-executives (last visited September 22, 2020)

8

42.     When a request for a statement of unpaid assessments is made through HomeWise, a FirstService employee will receive the request, confirm that the homeowner does not have any unpaid assessments to the OA, and then documents that in the HomeWise system.

43.     A form document, that Defendants title "Closing Letter" (which is a statement of unpaid assessments) is then sent to the closing attorney who requested the statement of unpaid assessments through HomeWise.

44.     Homeowners in an OA managed by FirstService do not contract, negotiate, or bargain with HomeWise for any of the services HomeWise provides to FirstService.

45.     HomeWise and FirstService invoice homeowners directly together, but as separate line items for services provided, each describing the charge as a "Resale Demand".

46.     Defendants assert that these charges are "due" from homeowners, and require that homeowners pay these charges as part of the real estate closing.

### The Role of Statements of Unpaid Assessments in Real Estate Transactions

47.     Defendants provide statements of unpaid assessments as part of the sale, gift, conveyance, assignment, inheritance, or other transfer of an ownership interest in real property located in North Carolina.

48.     When Defendants provide statements of unpaid assessments upon the transfer of an ownership interest in real property as described above, Defendants

9

charge Resale Fees payable upon the transfer of the interest in real property or payable for the right to make or accept such transfer.

49.  Defendants charge Resale Fees for the preparation of statements of unpaid assessments at the time of closing and requires Resale Fees to be paid at the closing of a real estate transaction.

50.  For all practical purposes, a homeowner whose home is part of an OA cannot sell the home without a statement of unpaid assessments.

51.  Absent a statement of unpaid assessments showing a zero balance, a closing attorney will not certify to a title insurance company that the title is free and clear of any OA liens for assessments.

52.  In addition, a statement of unpaid assessments showing a zero balance is often a condition of a lender in order to disburse loan funds.

53.  Under either scenario, a real estate transaction cannot close until a statement of unpaid assessments is provided by Defendants.

54.  In other words, a statement of unpaid assessments is an indispensable component of a residential real estate transaction involving properties within an OA.

55.  In particular, Plaintiff's closing attorney would not have certified to Plaintiff's title insurance company that the title was free and clear of any OA liens for assessments absent a statement of unpaid assessments, and a lender would not have disbursed loan funds absent a statement of unpaid assessments demonstrating a zero balance.

10

## Defendants' Charges for the Preparation of
## Statements of Unpaid Assessments

56.     Despite the ease with which Defendants can produce a statement of unpaid assessments and the minimal labor it requires, Defendants arbitrarily charge individuals like Plaintiff and the Class members $300 or more.

57.     The vast majority of the fee charged by Defendants represents pure profit for them, only benefits Defendants, and exceeds the reasonable expectation of the Plaintiff and the Class members.

58.     Plaintiff and the Class have no manner in which to negotiate the amount of the fee charged, yet Plaintiff and the Class members are not be able to close on the sales of their homes unless they pay these unreasonable fees to Defendants.

59.     Upon information and belief, Defendants charge a fee for the statements of unpaid assessments to Plaintiff and the Class without regard to individual circumstances.

60.     Upon information and belief, Defendants performed no analysis regarding the actual cost to provide the statement of unpaid assessments when establishing the rate to charge Plaintiff and the Class.

61.     By charging unreasonable and unlawful "transfer fees" to transferors' of real property, Defendants effectively implement a sales penalty.

62.     While the transfer fees are ostensibly to provide a statement of unpaid assessments to the transferor of real property, a portion of the fee is actually attributable to services rendered to the transferee of the property.

11

63. As part of the transfer fee charged to a selling homeowner, Defendants provides a number of post-sale services and activities exclusively for the buying homeowner that provide no benefit whatsoever to the selling homeowner.

64. These services include updating new owner information, generating welcome kits, and mailing information to the buying homeowner.

65. Defendants do not disclose to the seller that they are charging the seller for services rendered to the buyer.

## Defendants Have Only Two Potential Justifications for Charging Transfer Fees.

66. There are only two potential ways for entities, like Defendants, to lawfully charge Plaintiff and the putative class members with fees for statements of unpaid assessments.

67. First the "transfer fee" could be charged under G.S. § 39A-1.1 *et seq.*

68. Second, the "transfer fee" could be charged under G.S. §§ 47F-3-102(13) or 47C-3-102(12).

69. Here, Defendant FirstService Residential Carolinas, Inc. has claimed through responses to Plaintiff's Requests for Admission that its charges fall entirely outside the scope of G.S. § 39A-1.1 *et seq. See* **Exhibit A**.

70. Therefore, by default it must be contending it has authority for its charges under G.S. §§ 47F-3-102(13) or 47C-3-102(12).

71. As explained below, Defendants actually had no legal basis whatsoever to charge for the "transfer fees" which they charged Plaintiff and the putative class.

12

<u>*Defendants Lack Authority to Charge for Statements*</u>
<u>*of Unpaid Assessments under G.S. § 39A-1.1 et seq*</u>

72.    General Statute 39A-1 *et seq.* (the "Transfer Fee Prohibition Act") was enacted in 2010.

73.    The Transfer Fee Prohibition Act did not state a new public policy in North Carolina relating to real property.

74.    Rather, it was a restatement of North Carolina's policy toward real property found in the 1973 Real Property Marketable Title Act.

75.    In 1973, the North Carolina legislature made it clear that all land in North Carolina should be "made freely alienable and marketable."

76.    An entity that imposes a transfer fee as part of the sale of real property is restricting the alienability and marketability of title.

77.    The Transfer Fee Prohibition Act formalized the prohibition against transfer fees in North Carolina.

78.    The Transfer Fee Prohibition Act lists the reasons why transfer fees violate this public policy of North Carolina, including because: such fees impair "the marketability of title" impair "the transferability in real property," and constitute an "unreasonable restraint[] on alienation..."*See* G.S. § 39A-1(b).

79.    In order to preserve North Carolina's interest in the marketability of land, the legislature enacted the Transfer Fee Prohibition Act in 2010.

80.    That Act defines a "transfer fee" in G.S. § 39A-2 as:

> a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a

13

fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer.

81. That definition continues, and identifies ten specific fees that are not considered transfer fees within the definition of G.S. § 39A-2.

82. In other words, if a fee meets the definition a "transfer fee" in G.S. § 39A-2(2) but does not meet any of the exceptions listed in G.S. § 39A-2(2)(a)-(j), then the fee is an unlawful transfer fee.

83. Relevant here is the exception identified in G.S. § 39A-2(2)(h), which excludes from the definition of a transfer fee:

> Any reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. § 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. § 47C-3-102(12).

84. The limitation of the fee to a "reasonable" amount necessarily means that any *un*reasonable fee is a transfer fee within the definition of G.S. § 39A-2.

85. The enforcement mechanism of the Transfer Fee Prohibition Act is found in G.S. § 39A-3(b).

86. Under this provision, "[a] person who records a transfer fee covenant, files a lien that purports to secure payment of a transfer fee, ***or enters into an agreement imposing a private transfer fee obligation*** shall be liable..." G.S. § 39A-3(b) (emphasis added).

87. Put another way, there are three events that trigger liability: (1) recording a transfer fee covenant; (2) filing a lien securing a transfer fee; and (3) entering into an agreement to impose a transfer fee obligation.

14

88.    Thus, despite the title of § 39A-1 *et seq*. and the subtitle of § 39A-3, the Transfer Fee Prohibition Act addresses unlawful activity outside of the narrow definition of a transfer fee covenant.

89.    The available remedies under the Transfer Fee Prohibition Act demonstrates that the breadth of the statute exceeds beyond transfer fee covenants. For example, violation of the Transfer Fee Prohibition Act allows the injured party to recover "damages resulting from the imposition of the ***transfer fee obligation***...including the amount of any transfer fee paid by a party to the transfer." G.S. § 39A-3(b)(1) (emphasis added).

90.    In addition, the Transfer Fee Prohibition Act "applies to (i) any transfer fee covenant that is recorded after July 1, 2010...***and*** (iii) any agreement imposing a ***private transfer fee obligation*** entered into after July 1, 2010." G.S. § 39A-4(a) (emphasis added).

91.    However, because Defendants charge an *un*reasonable and unlawful amount to provide a statement of unpaid assessments, Defendants' unreasonable "transfer fees" are transfer fees within the definition of G.S. § 39A-2 and fail to meet any exception listed in G.S. § 39A-2(a)-(j).

*Defendants Lack Authority to Charge for Statements of Unpaid Assessments under G.S. §§ 47F-3-102(13) or 47C-3-102(12)*

92.    To the extent that G.S. § 39A-1 *et seq*. is inapplicable, the only alternative statutory avenues to charge for statements of unpaid assessments are found in G.S. §§ 47F-3-102(13) and 47C-3-102(12).

15

93.    General Statute 47F-3-102 provides a list of powers an owners' association can exercise; likewise, § 47C-3-102 provides a list of powers a condominium owners' association can exercise.

94.    FirstService's property management agreements with OAs allow FirstService to exercise the powers listed in G.S. §§ 47F-3-102 an 47C-3-102.

95.    HomeWise has no agreement with OAs to exercise the powers listed in G.S. §§ 47F-3-102 an 47C-3-102 on their behalf.

96.    Until recently,[10] OAs under both Chapter 47F and 47C were allowed to charge a "reasonable "fee for providing statements of unpaid assessments. *See* G.S. § 47F-3-102(13) (allowing the association to "[i]mpose reasonable charges in connection with the preparation and recordation of documents, including...statements of unpaid assessments."); G.S. § 47C-3-102(12) (allowing the association to "[i]mpose reasonable charges for the preparation [of]...statements of unpaid assessments.").

97.    The Resale Fees charged by Defendants to Plaintiff and the putative class members was not reasonable or lawful under either G.S. §§ 47F-3-102(13) and 47C-3-102(12).

---

[10] On July 2, 2020, Session Law 2020-90 was enacted that amended a number of various statutes, including substantively amending G.S. §§ 47F-3-12 and 47C-3-102 to create new subparagraphs that imposed new rights and responsibilities not then covered in the respective statutes. Notably, the "reasonable fee" may not exceed $200, as well as a new "expedite fee" that may not exceed $100. The July 2, 2020, amendment was a substantive amendment with only prospective effect.

16

98. Defendants performed no analysis regarding the actual cost to provide the statement of unpaid assessments when establishing the rate to charge for the Resale Fees.

99. The Resale Fees charged to Plaintiff is unreasonably and unlawfully high for the services provided, bears no relationship to the actual cost of performing the services, exceeds the reasonable expectation of Plaintiff and class members, represents pure profit to Defendants, and was arbitrarily determined by Defendants.

100. Because Defendants charge an unreasonable fee for statements of unpaid assessments, Defendants lacks authority under G.S. §§ 47F-3-102 and 47C-3-102 to charge for statements of unpaid assessments.

### Homeowners Do not Agree to Pay
### Defendants Unreasonable Fees

101. Plaintiff and putative class members do not enter into written or oral contracts with Defendants, and therefore do not agree to the imposition of Resale Fees.

102. Shortly before closing, Defendants send sellers form written correspondence, sometimes styled "Closing Letter." *See* Ex. C.

103. The Closing Letter declares that the seller is required to pay a "transfer fee" at closing that is "due" and "payable" directly to FirstService.

104. FirstService does not and will not negotiate with sellers the amount it charges for Resale Fees.

17

105. The Closing Letter also declares that the seller is required to pay a "transfer fee" at closing that is "due" and "payable" directly to HomeWise.

106. HomeWise does not and will not negotiate with sellers the amount it charges for a Resale Fee.

107. Prior to claiming that the Resale Fee is "due," Defendants do not explain or disclose the basis for the fee charged, or the purpose of the fee. Accordingly, Plaintiff and putative class members lack a full knowledge of all facts and circumstances and the means to obtaining such knowledge.

108. Defendants cause the Resale Fee to appear on required real estate settlement statement(s) alongside the final sales price, taxes, and other legal amounts to create the impression that the Resale Fee is likewise a legal charge when, in reality, it is not a legal charge.

## Defendants' Unlawful Charges to Plaintiff

109. Plaintiff purchased a home located at 209 Lincoln Street, Charlotte, North Carolina in December 19, 2008.

110. The home was located in the Block at Church Street subdivision, and its OA, the Block at Church Street Owners Association contracted with FirstService for various property management responsibilities, including those described in this Amended Complaint.

111. One of FirstService's responsibilities was to collect monthly assessments from property owners in the community.

18

112.	After residing there many years, Plaintiff sold the home on February 4, 2020.

113.	When he sold the home, Plaintiff was charged a $284 "HOA – Certification/Transfer Fee" from FirstService as part of his closing statement. The closing statement is attached as **Exhibit B**. The "HOA – Certification/Transfer Fee" is the same as the Resale Fees described herein.

114.	In addition, to the fees charged by FirstService, Plaintiff was also assessed a $33 fee by a company called HomeWise for another item entitled "Resale Demand." Ex. C.

115.	In other words, Defendants apparently charged Plaintiff for the same services.

116.	This made the amount of Resale Fees that Defendants charged Plaintiff on this single home sale a total of $317.

117.	This is how Defendants' routinely assess fees to the putative class, by separately charging for the same services.

118.	In reality, the fees that were charged by HomeWise to Plaintiff and the class are really the charges that FirstService should be paying to HomeWise for its use of HomeWise's systems. Instead, the Defendants have an agreement to pass those costs onto sellers like Plaintiff and the Class.

119.	Indeed, FirstService does not pay HomeWise anything for its use of its software.

120.    Instead, HomeWise simply charges consumers like Plaintiff directly for the services that HomeWise renders to FirstService.

121.    HomeWise, recognizing that its double charges could exceed statutory maximums in certain states for the services it provides, states on its website that its "pricing is established with management company approval."[11] The "management company" referred to by HomeWise includes FirstService.

122.    The Resale Fees are charged by Defendants for the preparation of a statement of unpaid assessments and other services.

123.    The Resale Fees charged by FirstService are composed of a "Resale Demand" charge of $169.00, an "Account Setup Fee" of $50.00, and a "Rush Fee" of $65.00, for a total of $284.00. The itemized invoice, styled "Resale Demand Update" is attached as **Exhibit C**.

124.    In addition to the Resale Fees charged by FirstService, Plaintiff was charged $33.00, payable to HomeWiseDocs.com. *See* Ex. C.

125.    Upon information and belief, the HomeWise Resale Fees are fees to store OA documentation.[12]

---

[11]    https://homewisedocshelp.zendesk.com/hc/en-us/articles/360022452732-What-if-the-price-exceeds-the-state-caps- (last accessed September 22, 2020) (stating in response the frequently asked question "What if the price exceeds the state caps?" that "The pricing is established with management company approval and includes the HomeWiseDocs fee.").

[12]    https://homewisedocshelp.zendesk.com/hc/en-us/articles/360022453372-What-is-a-HomeWiseDocs-Fee- (last visited June 1, 2020).

20

# What is a HomeWiseDocs Fee?

 HWD Support
1 year ago · Updated

[Follow]

The fee that HomeWiseDocs charges to store the requested documentation within our database.

(f) (y) (in)

126. The documentation stored by HomeWiseDocs.com is distinct from the "Resale Demand Update", which is provided by FirstService for a total of $284, and it is a duplicative service.

127. The Resale Fees were charged by Defendants for providing the statement of unpaid assessments to Plaintiff in verifying that the status of his assessments at the time of the sale of his home, and in all respects constituted a fee charged for preparing a statement of unpaid assessments.

128. As described above, due to FirstService's usage of HomeWise's software to track the monthly collection of assessments, it simply took a couple of keystrokes and a matter of minutes to confirm the amount owed on Plaintiff's assessments.

129. The "Resale Demand Update" attached as **Exhibit C** is a form document that HomeWise's software populates with property-owner specific information maintained in HomeWise's software.

21

130. Since FirstService already utilizes software per its obligations to the OAs it serves, and because it utilizes software provided by HomeWise, FirstService does not incur any new actual costs related to the determination that property owners such as Plaintiff and other putative class members are current on their assessment payments.

131. Despite only taking a few keystrokes, several minutes, and no actual additional costs to FirstService, the Resale Fees were more than five months of Plaintiff's homeowners' insurance, and more than a month of Plaintiff's HOA dues.

132. Plaintiff did not negotiate, and was not provided an opportunity to negotiate, the amount of the "transfer fee," nor did they possess a full knowledge of all facts and circumstances and the means to obtaining such knowledge as to the Resale Fees.

## Class Action Allegations

133. Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action on behalf of a proposed class and subclass defined as follows:

> Class: All individuals who were charged and paid Resale Fees to FirstService for property sales in North Carolina.
>
> Subclass: All individuals who paid Resale Fees to FirstService and HomeWise for property sales in North Carolina.

134. Excluded from the Classes are: (a) any Judge presiding over this action and members of their families; (b) Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, assigns and

22

successors; and (c) all persons and entities who timely and properly excludes himself or herself from the classes.

135. Plaintiff reserves the right to alter the Class definitions as necessary to the full extent allowed by applicable law.

136. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

### Numerosity

137. The size of the classes are so large that joinder of all Class members is impracticable as Plaintiff is informed and believe that the Classes consist of hundreds, if not thousands of members.

### Commonality

138. All questions, and their respective answers, concerning the reasonableness of the Resale Fees charged by Defendants are common to the Classes. Whether Defendants' charges violate G.S. § 39A-1 *et seq.* is a question common for all members of the class. Further, the answer to this question will drive other common answers in the litigation, including what a reasonable fee is for Defendants to charge for the provision of its certification that a home seller is current on its OA assessments. Other common questions of law and fact include, but are not limited to:

23

a. Whether Defendants' charges for statements of unpaid assessments and/or resale certificates and other services violated G.S. § 39A-1 *et seq.*;

b. Whether Defendants' charges for unpaid assessments and/or resale certificates and other services were reasonable;

c. Whether Defendants' charges for unpaid assessments and/or resale certificates bore any relationship to the actual costs incurred in preparing the statements of unpaid assessments and/or resale certificates;

d. Whether G.S. § 39A-2(2)(h) only permits charging of a reasonable fee for the preparation of unpaid assessments and/or resale certificates when the seller is delinquent on its payment of assessments;

e. What amount is a reasonable fee for Defendants to have charged for the preparation of unpaid assessments and/or resale certificates pursuant to G.S. § 39A-2(2)(h);

f. Whether Defendants' charge of Resale Fees for other services was reasonable;

g. Whether Defendants negligently misrepresented the amount they could lawfully charge for unpaid assessment statements and/or resale certificates;

h. Whether Defendants had an agreement to charge fees for the preparation of unpaid assessments and/or resale certificates that exceeded the statutorily allowable amount; and

i. Whether Defendants violated the North Carolina Debt Collection Act by charging for unpaid assessment statements and/or resale certificates without legal authority.

### *Predominance*

139. These, and other common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice, and policy of uniformly charging unreasonable and excessive fees for the simple process of certifying that a property seller is current on the payment of his or her OA assessments.

### *Typicality*

140. The claims of Plaintiff are typical of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants has a specific policy of charging unreasonable and excessive fees from each member of the Classes.

### *Adequate Representation*

141. The Plaintiff is an adequate representative of the Classes in that the Plaintiff does not have any antagonistic or conflicting claims with other members of the Classes. Plaintiff has also retained counsel experienced in the prosecution of complex class actions and consumer litigation. Neither Plaintiff nor his counsel

25

have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative classes and has accepted such responsibilities.

### Superiority

142.   A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiff does not anticipate any difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

143.   Further, Defendants have acted on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive and declaratory relief with respect to the classes as a whole.

### FIRST CAUSE OF ACTION
### Violation of the North Carolina Prohibition on Transfer Fee Covenants
### G.S. § 39A-1, *et seq.*

144.   Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

145.   Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Classes.

146.   Defendants are persons within the meaning of G.S. § 39A-3(b).

147. Defendants charged Plaintiff and the putative Class members transfer fees subject to G.S. 39A-1 *et seq.*

148. Transfer fees are unlawful in North Carolina unless expressly allowed by G.S. § 39A-2(2).

149. The only cognizable and available exception for Defendants to charge the Resale Fees as described in this Complaint is found in G.S. § 39A-2(2)(h), which provides that the following are not transfer fees:

> Any reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. § 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. § 47C-3-102(12).

150. Defendants' fees are not reasonable, because, *inter alia*, the fees bear no relation to the actual cost incurred by Defendants for providing statements of unpaid assessments, are arbitrarily determined, are pure profit to Defendants, are unreasonably high in light of the services provided, exceed reasonable expectations of sellers, and are for duplicative services.

151. Because Defendants' fees are not reasonable, the entirety of the fees charged to and paid by Plaintiff and the Classes violate G.S. § 39A-1, *et seq.*

152. Plaintiff and the members of the Classes have been damaged because they paid transfer fees to Defendants that were unlawfully charged by Defendants.

153. Pursuant to G.S. § 39A-3(b), Defendants entered into an agreement with OAs to impose a private transfer fee obligation on Plaintiff and the members of the classes.

27

154. As a result, Plaintiff and the Classes are entitled to recover from Defendants the entirety of the unlawful fees that they paid, along with any other damages suffered to be proven at trial, and all attorneys' fees, expenses, and costs incurred in this action.

## SECOND CAUSE OF ACTION
### Violation of the North Carolina Unfair and Deceptive Trade Practices
### G.S. § 75-1.1, *et seq.*

155. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

156. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Classes.

157. At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

158. The conduct of Defendants as set forth herein is against the established public policy of the State of North Carolina, is unfair, unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

159. Defendants' violations of the UDTPA include, but are not limited to:

    a. Charging unreasonable fees for the preparation of statements of unpaid assessments and/or resale certificates;

    b. Charging unreasonable fees to the transferor that fund post-sale activities and services that exclusively benefit the transferee;

28

c.  Violating the express public policy of this State that favors the marketability of real property and the transferability of interests in real property;

d.  Unfairly charging fees for preparation of statements and/or resale certificates that bear no relation to the actual cost of providing the statements;

e.  Unfairly charging fees for preparation of statements of unpaid assessments and/or resale certificates that exceeded the reasonable expectation of consumers such as Plaintiff and the members of the putative Class;

f.  Deceptively claiming that Resale Fees are legally owed when Defendants had no legal basis to claim the amount owed; and

g.  Undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unfair, deceptive, misleading, coercive, and substantially injurious to consumers such as Plaintiff.

160.  The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Classes.

161.  Plaintiff and the members of the Classes suffered actual injury as a result of Defendants' unfair actions. Such injury consists of the gross overpayment for services rendered by Defendants and other damages as will be shown at trial of this action.

162. Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

163. Plaintiff and each member of the Classes have been damaged and are entitled to recover treble damages, costs, and attorneys' fees incurred in this action.

### THIRD CAUSE OF ACTION
### Negligent Misrepresentation

164. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

165. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Classes.

166. Defendants made material representations and/or caused representations to be made to Plaintiff and the members of the Classes in closing documents that the Resale Fees or other similar fee charged for the preparation of statements of unpaid assessments was lawfully owed.

167. When Defendants made these representations and/or caused these representations to be made, Defendants knew that the fees charged were unreasonable or had a reckless disregard for whether the fees were unreasonable.

168. Defendants knew or ought to have known that Plaintiff and the Class and Subclass members were relying on the representations.

169. In reliance upon the material representations, Plaintiff and Class and Subclass members used their funds to make payments to Defendants when the

30

unreasonable fees charged for preparation of statements of unpaid assessments constituted unlawful transfer fees and were therefore barred by statute.

170. Plaintiff and the Class and Subclass members could not have discovered Defendants' misrepresentations upon the exercise of reasonable inquiry, especially given that they only learned of the unreasonable charges by Defendants at the time of closing, and have no opportunity to investigate the basis for Defendants' charges.

171. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and the Class and Subclass members have been damaged as set forth in this complaint.

172. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and the Class and Subclass members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## FOURTH CAUSE OF ACTION
### Violation of the North Carolina
### Debt Collection Act
### G.S. § 75-50 *et seq.*

173. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

174. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Classes.

31

175. Plaintiff and each Class and Subclass Member is a "consumer" as that term is defined by N.C. Gen. Stat. § 75-50.

176. The amount purportedly owed to Defendants by Plaintiff and each member of the proposed Classes is a "debt," as that term is defined by N.C.G.S. § 75-50.

177. At all times relevant to this action, FirstService, in the ordinary course of business as a property management company, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

178. At all times relevant to this action, HomeWise, in the ordinary course of business as a software company rendering services to consumers engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

179. Defendants, in seeking to recover fees for unpaid assessment statements, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

180. Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

181. Defendants are subject to the requirements of N.C.G.S. § 75-50 et seq., that prohibits certain activities by debt collectors.

182. Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take and actually taking action not permitted by law.

32

183. Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, inter alia, assessing and collecting fees for unpaid assessment statements without a legal justification.

184. Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, inter alia, claiming that fees for unpaid assessment statements were owed without a legal justification.

185. Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, inter alia, assessing fees for unpaid assessment statements and/or without a legal justification.

186. The sending of the Closing Letter that asserts the Resale Fees are due and owing and attempting to collect those amounts when they were not owed violates N.C.G.S. § 75-50 *et seq.*

187. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

188. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means by representing that Plaintiff and the Class and Subclass Members owed unreasonable fees for unpaid assessment statements within the closing statements.

189. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means by representing that Plaintiff and the

33

Class and Subclass Members owed unreasonable fees for unpaid assessment statements when such unreasonable fees are against the public policy of North Carolina, and because absent payment of Defendants' unreasonable fees the real estate transaction cannot close.

190. A violation of N.C.G.S § 39A-1 *et seq* constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq*.

191. Defendants' actions in violation of North Carolina's Unfair Debt Collection Act were willful.

192. Plaintiff and each member of the Class and Subclass were injured by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

193. Plaintiff and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

194. Plaintiff and each member of the Class are also entitled to recover treble damages pursuant to this claim.

34

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

195. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

196. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class and Subclass.

197. No contract existed between Plaintiff and each member of the putative Class and Subclass, and Defendants.

198. Plaintiff and each member of the putative Class conferred benefits on Defendants by paying the Resale Fees, which were received by Defendants.

199. Defendants consciously accepted the Resale Fees and the Resale Fees were not conferred gratuitously or by an interference in the affairs of any other entity.

200. It would be unjust for Defendants to retain the Resale Fees paid by Plaintiff and each member of the putative Class.

## SIXTH CAUSE OF ACTION
### Petition for Declaratory Judgment
### G.S. § 1-253, *et seq.*

201. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

202. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Classes.

35

203. Plaintiff and the members of the Classes file this petition for a Declaratory Judgment under G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under that statute.

204. Plaintiff and the members of the Classes have an actual controversy with Defendants regarding whether the fees charged by Defendants are reasonable for confirming that a seller is current on his or her OAs assessment payments.

205. Upon information and belief, Defendants charged the same, or similar amounts to Plaintiff and each member of the Classes upon the closing of the sale of their respective properties.

206. G.S. § 39A-1, *et seq* provides that transfer fees are prohibited in North Carolina.

207. But for an express exception in G.S. § 39A-2(2)(h), Defendants would never be allowed to charge a fee for confirming that a seller is current on his or her assessment payments.

208. G.S. § 39A-2(2)(h), however, provides that for purposes of Chapter 39A, the following fee is not considered a transfer fee:

> Any reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. § 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. § 47C-3-102(12).

209. The fee charged by Defendants to provide these services is not reasonable because it bears no relation to FirstService's actual costs for performing these services, among other reasons identified herein.

36

210. Therefore, Plaintiff and the Class and Subclass seek a declaratory judgment that the Resale Fees charged by Defendants to provide these services is unreasonable and violates G.S. § 39A-2(2)(h).

### SEVENTH CLAIM FOR RELIEF
**Civil Conspiracy**

211. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully set forth herein.

212. At all times relevant, there existed a conspiracy between and among Defendants FirstService and HomeWise to charge consumers amounts for statements of unpaid assessments that were unreasonable and unlawful.

213. This conspiracy and agreement, as set forth herein, was to do an unlawful act, or to do a lawful act in an unlawful way.

214. FirstService committed acts in furtherance of the conspiracy including, but not limited to, sending Plaintiff and the class members a "Closing Letter" that stated amounts were "due" and "payable" which in fact were not owed, charging amounts for the preparation of unpaid assessments which were unreasonable, and by charging sellers for services that are actually rendered to buyers without disclosing as much.

215. HomeWise committed acts in furtherance of the conspiracy including, but not limited to, preparing the form document titled "Closing Letter" which represents that amounts are "due" and "payable" to Defendants which are in fact

not due, and by charging amounts for the preparation of unpaid assessments which were unreasonable.

216. As a direct, proximate, and foreseeable result of the acts by FirstService and HomeWise, Plaintiff and the members of the Classes have suffered damages in amounts exceeding $25,000, said amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed Class respectfully request that this Court:

1. Certify the Class and Subclass, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

2. Award Plaintiff and each member of the Class and Subclass compensatory damages in an amount to be determined at trial;

3. Treble the actual damages awarded to Plaintiff and each member of the Class and Subclass in accordance with G.S. §75-1.1;

4. Award Plaintiff and each member of the Class and Subclass civil penalties of not less than $500 and not greater than $4,000 for each violation in accordance with G.S. § 75-50 *et seq.*;

5. Award attorneys' fees, expenses, costs, and interest to Plaintiff and members of the Class pursuant to G.S. §§ 75-16.1, 39A-3, and other applicable law;

6. Tax the costs of this action to Defendants jointly and severally;

7. Allow a trial by jury on all issues so triable; and

38

8.     Grant Plaintiff and the members of the Proposed Class and Subclass such other and further relief as the Court deems just and proper.

Respectfully submitted on this _15th_ day of October, 2020.

Scott C. Harris, Bar No. 35328
Patrick M. Wallace, Bar No. 48138
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com
jeremy@whitfieldbryson.com

39

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **AMENDED CLASS ACTION COMPLAINT** to the parties below via email pursuant to a service via email agreement between the parties:

Richard T. Boyette
Laura E. Dean
Cranfill Sumner & Harzog LLP
P.O. Box 27808
Raleigh, NC 27611
rtb@cshlaw.com
ldean@cshlaw.com

Dated: October 15th, 2020.

Scott C. Harris, Bar No. 35328
Patrick M. Wallace, Bar No. 48138
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com
jeremy@whitfieldbryson.com

*Attorneys for Plaintiff*

40

# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

LOGAN DERNOSHEK, on behalf of
himself and all others similarly
situated,

Plaintiff,

v.

FIRSTSERVICE RESIDENTIAL,
INC.; and FIRSTSERVICE
RESIDENTIAL CAROLINAS, INC.

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20-CVS-1689

**FIRSTSERVICE RESIDENTIAL
CAROLINAS, INC.'S RESPONSES TO
PLAINTIFF'S FIRST SET OF
REQUESTS FOR ADMISSION**

TO:   Plaintiff, by and through his attorneys of record:
      Scott C. Harris
      Patrick M. Wallace
      Jeremy R. Williams
      Whitfield Bryson LLP
      900 W. Morgan Street
      Raleigh, NC 27603

The undersigned serves on you the following responses to Plaintiff's First Set

of Requests for Admission. Such answers appear in the spaces provided following

each Requests.

This the 28th day of September, 2020.

CRANFILL SUMNER & HARTZOG LLP

BY: _____
RICHARD T. BOYETTE / State Bar No. 7623
LAURA E. DEAN / State Bar No. 43775
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone (919) 828-5100
Email ldean@cshlaw.com
*Attorneys for Defendants*

## RESPONSES TO REQUESTS FOR ADMISSION

1. Admit that you created the document attached as Exhibit A to Plaintiff's Complaint.

**RESPONSE:**

**Denied.**

2. Admit that the document attached as Exhibit A to Plaintiff's Complaint contains a request for payment in the amount of $284.

**RESPONSE:**

**Admitted.**

3. Admit that you were paid the $284 charged by the document attached as Exhibit A to Plaintiff's Complaint.

**RESPONSE:**

**Admitted.**

4. Admit that the $284 charged to Plaintiff was for a certification that Plaintiff was not delinquent on their HOA assessments.

**RESPONSE:**

**Admitted that FSR Carolinas charged $169.00 for a Resale Demand, $50.00 for Account Setup Fee and $65.00 for Rush Fee. Except as admitted, denied.**

2

4847-3892-0390, v. 3

5.     Admit that the certification you provided was a statement of unpaid assessments.

**RESPONSE:**

**Admit that FirstService Residential Carolinas, Inc. ("FSR Carolinas") provided information regarding the status of plaintiff's homeowner association assessment obligations. Except as admitted denied.**

6.     Admit that you contend the $284 charge to Plaintiff was allowable under G.S. § 39A-1, *et seq.*

**RESPONSE:**

**FSR Carolinas denies that any portion of the $284 charge falls within the scope of G.S. § 39A-1, *et seq.* FSR Carolinas further denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.*   Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.**

7.     Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(a).

**RESPONSE:**

**FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.**

3

4847-3892-0390, v 3

8.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(b).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

9.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(c).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

10.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(d).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

4

11.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(e).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq*. Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

12.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(f).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq*. Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

13.    Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(g).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq*. Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

5

4847-3892-0390, v. 3

14.   Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(i).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

15.   Admit that the $284 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(j).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

16.   Admit that the $284 fee you charged to Plaintiff was a fee charged under G.S. § 39A-2(2)(h).

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

6

4847-3892-0390, v. 3

17. Admit that you have charged fees to other individuals for the preparation of statements of unpaid assessments in the last four years.

**RESPONSE:**

**Admitted that FSR Carolinas has charged for providing information requested for closings of property purchase and sale transactions in communities under its management in the past four years, and that one component of the services covered by the charge is providing information regarding the status of plaintiffs' homeowner association assessment obligations. Otherwise, as phrased, denied.**

18. Admit that those fees that you charged to other individuals for the preparation of statements of unpaid assessments in the last four years were charged under G.S. § 39A-2(2)(h).

**RESPONSE:** FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

19. Admit that the fees you charged to other individuals for the preparation of statements of unpaid assessments in the last four years were not charged under G.S. § 39A-2(2)(a-i, or j).

**RESPONSE:**

7

4847-3892-0390, v. 3

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, *et seq.* Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

20. Admit that you have not charged fees to other individuals under G.S. G.S. § 39A-2(2)(a-i, and j) in the last four years.

RESPONSE:

FSR Carolinas denies that a charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, et seq. Thus, the charge is neither authorized by nor prohibited by Chapter 39A. Otherwise, as phrased, this request is denied.

21. Admit that you did not pay any amount of the $284 fee you charged Plaintiff to any third parties.

RESPONSE:

Admitted.

22. Admit that you did not pay any amount of the fee you charged to other individuals under G.S. § 39A-2(2)(h) to any third parties.

RESPONSE:

FSR Carolinas denies that the charge for certification of unpaid assessments is a transfer fee within the scope of G.S. § 39A-1, et seq. Thus, the charge is neither authorized by nor prohibited by Chapter 39A. FSR

8

4847-3892-0390, v. 3

Carolinas admits that it did not pay any portion of the $284 charge payable to FSR Carolinas as included in Exhibit A to the complaint to any third party. Otherwise, as phrased, this request is denied.

This the 28th day of September, 2020.

CRANFILL SUMNER & HARTZOG LLP

BY: _____
RICHARD T. BOYETTE
State Bar No. 7623
LAURA E. DEAN
State Bar No. 43775
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone (919) 828-5100
Email ldean@cshlaw.com
          rtb@cshlaw.com
Attorneys for Defendants

4847-3892-0390, v. 3

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the *FirstService Residential Carolinas, Inc.'s Responses to Plaintiff's First Set of Requests for Admission* on all of the parties to this cause by email, addressed to the attorney for each party as follows:

Scott C. Harris
Patrick M. Wallace
Jeremy R. Williams
Whitfield Bryson LLP
900 W. Morgan Street
Raleigh, NC 27603
*Attorneys for Plaintiff*

This the 28th day of September, 2020.

CRANFILL SUMNER & HARTZOG LLP

BY: _____
RICHARD T. BOYETTE
State Bar No. 7623
LAURA E. DEAN
State Bar No. 43775
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone (919) 828-5100
Email ldean@cshlaw.com
      rtb@cshlaw.com
Attorneys for Defendants

10

4847-3892-0390, v. 3

# EXHIBIT B

**Doyle & Wallace, PLLC**
**ALTA Universal ID**
**2701 Coltsgate Road, Suite 210**
**Charlotte, NC 28211**

| | |
|---|---|
| **File No./Escrow No.:** | 20200027CEP |
| **Print Date & Time:** | February 3, 2020 at 08:49 AM |
| **Officer/Escrow Officer:** | |
| **Settlement Location:** | 2701 Coltsgate Road, Suite 210, Charlotte, NC 28211 |
| **Property Address:** | 209 Lincoln Street |
| | Charlotte, NC 28203 |
| **Borrower:** | ZACHARY SCOTT DANIELS |
| **Seller:** | LOGAN W. DERNOSHEK |
| **Lender:** | Regions Bank dba Regions Mtg. |
| **Settlement Date:** | February 4, 2020 |
| **Disbursement Date:** | February 4, 2020 |

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | $ 510,000.00 | Sale Price of Property | $ 510,000.00 | |
| | | Deposit | | $ 5,000.00 |
| | | Loan Amount | | $ 408,000.00 |
| | | **Prorations/Adjustments** | | |
| $ 411.33 | | County Taxes | | $ 411.33 |
| | | 01/01/20 to 02/05/20 | | |
| $ 250.00 | | Due Diligence Credit | | $ 250.00 |
| $ 27.33 | | HOA - Feb-Mar Dues | $ 382.67 | |
| | | 02/01/20-03/31/20 | | |
| | | **Loan Charges to Regions Bank dba Regions Mtg.** | | |
| | | Application Fee | | |
| | | $ 920.00 | | |
| | | Paid by Regions Bank dba Regions Mtg. | | |
| | | Loan Administration Fee | $ 50.00 | |
| | | $ 100.00 | | |
| | | Paid by Regions Bank dba Regions Mtg. | | |
| | | Prepaid Interest | $ 224.98 | |
| | | $32.14 per day from 02/04/20 to 02/11/20 | | |
| | | **Other Loan Charges** | | |
| | | Appraisal Fee        to E. Guy Woodliff | | |
| | | POC $ 500.00 | | |
| | | Paid by Borrower before closing | | |
| | | Credit Report Fee        to Equifax | $ 30.17 | |
| | | Flood Certification Fee        to CoreLogic | $ 7.50 | |
| | | Tax Service Fee        to 1st American Tax | $ 80.00 | |

Copyright 2015 American Land Title Association
All rights reserved

(20200027CEP.PFD/20200027CEP/7)
Printed on 02/03/20 at 08:49 AM

| Sel | ler | | Borro | wer/Buyer |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |

Service

| | | **Impounds** | | |
|---|---|---|---|---|
| | | Homeowner's Insurance | $ 256.00 | |
| | | 5 mo @ $ 51.20 /mo | | |
| | | Property Taxes | $ 1,985.28 | |
| | | 12 mo @ $ 165.44 /mo | | |
| | | Aggregate Adjustment | $ -1,117.37 | |

| | | **Title Charges & Escrow / Settlement Charges** | | |
|---|---|---|---|---|
| | | Title - Lender's Title Insurance | $ 698.00 | |
| | | to Attorneys Title Insurance | | |
| | | Coverage: | | |
| | | Premium: $ 698.00 | | |
| | | Title - Owner's Title Insurance (optional) | $ 230.00 | |
| | | to Attorneys Title Insurance | | |
| | | Coverage: | | |
| | | Premium: $ 230.00 | | |
| $ 350.00 | | Title - Deed Preparation Fee to Doyle & Wallace, PLLC | | |
| | | Title - E-Filing Fee to Simplifile | $ 9.00 | |
| $ 30.00 | | Title - Payoff Wire/UPS fee to Doyle & Wallace, PLLC | | |
| | | Title - Settlement/Attorney Fee to Doyle & Wallace, PLLC | $ 900.00 | |

| | | **Commission** | | |
|---|---|---|---|---|
| $ 5,100.00 | | Commission to PJ Properties RE & Prop Mgmt | | |
| $ 15,300.00 | | Commission to Berkshire Hathaway Homeservices | | |

| | | **Government Recording and Transfer Charges** | | |
|---|---|---|---|---|
| | | Recording Fees to Mecklenburg County Register of Deeds | $ 90.00 | |
| | | Deed:$26.00 Mortgage:$64.00 | | |
| $ 1,020.00 | | Transfer State/Tax to Mecklenburg County Register of Deeds | | |

| | | **Payoffs** | | |
|---|---|---|---|---|
| $ 246,982.22 | | Payoff of First Mortgage Loan to M&T Bank | | |
| | | M&T Bank | | |
| | | Loan Payoff $ 246,982.22 | | |

Copyright 2015 American Land Title Association
All rights reserved

(20200027CEP.PFD/20200027CEP/7)
Printed on 02/03/20 at 08:49 AM

| Seller | | | | Borrower/Buyer | |
|---|---|---|---|---|---|
| Debit | Credit | | | Debit | Credit |
| | | As of 03/01/20 | | | |
| | | Include additional interest for | | | |
| | | -26 Days @ | Per Diem/Day  Plus 7  Extra Days | | |
| $ 143,500.00 | | Payoff of Second Mortgage to  Trullant | | | |
| | | Loan | | | |
| | | Truliant | | | |
| | | Include additional interest for | | | |
| | | Days @ | Per Diem/Day  Plus 7  Extra Days | | |
| | | **Miscellaneous** | | | |
| $ 33.00 | | HOA - Service Fee | to  HomeWiseDocs.com | | |
| | | HOA- Capital Contribution | to  The Block at Church Street Owners Assoc | $ 410.00 | |
| $ 284.00 | | HOA - Certification/Transfer Fee | to  FirstServe Residential Carolinas, Inc. | | |
| | | Homeowner's Insurance Premium  (12 mo.) | to  USAA | $ 1,331.00 | |
| $ 413,287.88 | $ 510,000.00 | **Subtotals** | | $ 515,567.23 | $ 413,661.33 |
| | | **Balance Due FROM** | | | $ 101,905.90 |
| $ 96,712.12 | | **Balance Due TO** | | | |
| $ 510,000.00 | $ 510,000.00 | **TOTALS** | | $ 515,567.23 | $ 515,567.23 |

## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Doyle & Wallace, PLLC to cause the funds to be disbursed in accordance with this statement.

ZACHARY SCOTT DANIELS

LOGAN W. DERNOSHEK

, Escrow Officer

Copyright 2015 American Land Title Association
All rights reserved

(20200027CEP.PFD/20200027CEP/7)
Printed on 02/03/20 at 08:49 AM

# EXHIBIT C

## Resale Demand Update
### The Block At Church Street Owners' Association Inc.
### FirstService Residential Carolinas, Inc.

**Property Information:**
209 Lincoln St
Charlotte, NC 28203-4169
Seller: Logan Demoshek
Buyer: Zachary Daniels

**Requestor:**
Doyle & Wallace, PLLC
Keegan Martin
704-749-7753
Estimated Closing Date: 02-05-2020

PLEASE RETURN THIS FORM WITH YOUR CHECK AND CERTIFIED COPIES OF THE CLOSING DISCLOSURE FORM (FORMERLY THE HUD-1 FORM) AND THE GRANT OR WARRANTY DEED. PLEASE INDICATE CONFIRMATION NUMBER ZC7KD5JLY-up1 ON THE CHECK TO ENSURE PAYMENT IS CREDITED PROPERLY.

## Payments Due At Closing

**Fees Due to FirstService Residential Carolinas, Inc.**

| | | |
|---|---|---|
| | Resale Demand Update | $0.00 |
| | Resale Demand | $169.00 |
| | Account Setup Fee | $50.00 |
| | Rush Fee | $65.00 |
| | **Total** | **$284.00** |

**Fees Due to The Block At Church Street Owners' Association Inc.**

| | | |
|---|---|---|
| | March Assessment | $205.00 |
| | Capital Contribution | $410.00 |
| | **Total** | **$615.00** |

**Fees Due to HomeWiseDocs.com (Service/Delivery Fees)**

| | | |
|---|---|---|
| | Resale Demand | $23.00 |
| | Rush Fee | $10.00 |
| | **Total** | **$33.00** |

**Include this confirmation number ZC7KD5JLY-up1 on the check for $284.00 payable to and send to the address below.**

FirstService Residential Carolinas, Inc.

5970 Fairview Road, Suite 710

Charlotte, NC 28210

**Include this confirmation number ZC7KD5JLY-up1 on the check for $615.00 payable to and send to the address below.**

The Block At Church Street Owners' Association Inc.

5970 Fairview Road, Suite 710

Charlotte, NC 28210

## Resale Demand Update
### The Block At Church Street Owners' Association Inc.
### FirstService Residential Carolinas, Inc.

**Property Information:**
209 Lincoln St
Charlotte, NC 28203-4169
Seller: Logan Dernoshek
Buyer: Zachary Daniels

**Requestor:**
Doyle & Wallace, PLLC
Keegan Martin
704-749-7753
Estimated Closing Date: 02-05-2020

**Include this confirmation number ZC7KD5JLY-up1 on the check for $33.00 payable to and send to the address below. \*\*Must return the HomeWiseDocs.com Invoice below with payment.\*\***

HomeWiseDocs.com

5520 Kietzke Lane Suite 200

Reno, NV 89511