UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action 1:21-cv-00056

| | | |
|---|---|---|
| LOGAN DERNOSHEK, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **FIRSTSERVICE RESIDENTIAL CAROLINAS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION TO DISMISS** |
| FIRSTSERVICE RESIDENTIAL, INC., FIRSTSERVICE RESIDENTIAL CAROLINAS, INC. and NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM, | ) ) ) ) ) ) ) ) | |
| Defendants. | | |

Defendant FirstService Residential Carolinas, Inc. ("Carolinas") respectfully submits this memorandum in support of its Amended Motion to Dismiss pursuant to Rule 12(b)(6).

**Statement of the Nature of the Matter Before the Court**

This matter arises out of charges for certification of the status of plaintiff's homeowner association assessment obligations. Plaintiff owned property in a subdivision in Charlotte for which Carolinas provided property management services. When plaintiff sold his property, Carolinas charged $169.00 to provide a statement of unpaid assessment plus $65.00 because it

was a rush. Plaintiff alleges he paid the amounts but now argues that the charges were prohibited under Chapter 39A of the North Carolina General Statutes, which prohibits transfer fee covenants, or were unreasonable notwithstanding the amount of the charge being less than the statutory maximum established by the General Assembly.

For the reasons discussed below, plaintiff has failed to state a claim upon which relief can be granted against Carolinas and his complaint should be dismissed.

## Statement of the Relevant Procedural History

On June 15, 2020, plaintiff filed a Class Action Complaint against FirstService Residential, Inc. ("FSR")[1] and Carolinas in Cabarrus County, North Carolina Superior Court. [DE 15, ¶ 1]. On or about October 20, 2020, with leave from the Cabarrus County Superior Court, plaintiff filed an Amended Complaint, which among other things, added NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs.com ("HomeWise") as a defendant. [DE 3]. On or about November 16, 2020, Carolinas timely filed a Motion to Dismiss and Answer to the Amended Complaint. [DE 15-2]. On January 20, 2021, HomeWise filed a Petition for Removal, in which

---

[1] On or about October 30, 2020, plaintiff voluntarily dismissed his claims against FirstService Residential, Inc. [DE 15-1]

4818-9617-9421, v. 3

HomeWise requested that the matter be removed to this Court. [DE 1].[2]

Following the removal of this matter, plaintiff and Carolinas filed a Joint Motion to Set Time for FirstService Residential Carolinas, Inc. to File Amended Motion to Dismiss and for Relief from Local Rule 23.1. [DE 15]. On January 29, 2021, the Court entered a Text Order granting the parties' Joint Motion providing, among other things, that Carolinas shall have up to and including February 22, 2021 to file an amended motion to dismiss and supporting brief. Carolinas now files its Amended Motion to Dismiss, [DE 23] and submits this memorandum in support.

## Statement of the Relevant Facts

Plaintiff owned a home located at 209 Lincoln Street in Charlotte, North Carolina in the Block at Church Street subdivision. [DE 3 ¶¶ 12, 109]. The Block at Church Street Owners Association, the property owners' association for the subdivision, contracted with Carolinas to provide property management services, including collection of monthly assessments. *See* [DE 3 ¶¶ 30, 110]. On or about February 4, 2020, plaintiff sold the home. [DE 3 ¶ 12]. In connection with the sale of his home, plaintiff alleges that he was charged $284.00 – consisting of $169.00 for a "ReSale Demand", a $50.00 for an "Account Setup Fee," and $65.00 for a "Rush Fee" – by Carolinas. [DE 3 ¶¶

---

[2] On February 19, 2021, plaintiff filed a Motion to Remand to State Court. [DE 21].

4818-9617-9421, v. 3

13, 14, 123, Ex C]. Plaintiff also alleges he was charged $33.00 – consisting of $23.00 for "Resale Demand" and $10.00 for a "Rush Fee" – by HomeWise. [DE 3 ¶¶ 13, 25, 114, 124, Ex C]. Despite this itemization, plaintiff alleges that the total $284.00 charge from defendants was for confirmation that he was current on the payment of his assessments to the HOA at the time of the sale of the property. [DE 3 ¶¶ 14, 15].[3] Instead, the actual charges by Carolinas for the certification of unpaid assessments was $169.00 plus $65.00 because it was a rush. [DE 3 ¶¶ 14, 15].

Plaintiff conclusory labels the charges "unreasonable" and therefore unlawful because they were a "transfer fee" subject to North Carolina General Statute § 39A-1 *et seq.* [DE 3 ¶ 1 ("This action involves unlawful and unreasonable charges of real estate 'transfer fees' by. . . [Carolinas] . . . and [HomeWise] . . . ."); ¶ 91 ("because Defendants charge an *un*reasonable and unlawful amount to provide a statement of unpaid assessments, Defendants' unreasonable 'transfer fees' are transfer fees within the definition of G.S. § 39A-2 and fail to meet any exception listed in G.S. § 39A-2(a) – (j)")]. Notwithstanding this characterization, as discussed more fully below, the charges for the certification at issue are not within the scope of Chapter 39A since they were not charged pursuant to a transfer fee covenant. Nor are the

---

[3] This position is inconsistent with other allegations in the Amended Complaint in which plaintiff acknowledges that part of the charged amounts was for services unrelated to preparing the statement of unpaid assessments. *See* [DE 3 ¶¶ 63, 64].

4

charges a "transfer fee" under North Carolina General Statute § 39A-2. Even if the charges constituted a transfer fee, they fall within an exception because the charges were reasonable.

## Statement of the Questions Presented

The pivotal questions before this Court are:

> 1. Are the charges at issue imposed pursuant to transfer fee covenants addressed by Chapter 39A?

> 2. Is the charge by Carolinas for certification of assessments a transfer fee as defined in Chapter 39A?

> 3. Were the charges at issue unreasonable?

If the answer to any of these questions is no, then Carolinas is entitled to dismissal of each of the claims against it.

## Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *DeSole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991). The question on a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). If it appears that a plaintiff is not entitled to relief under the stated facts, dismissal is proper. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

5

While a court ruling on a motion under Rule 12(b)(6) must accept all well-pleaded factual allegations as true and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 555. A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 557.

A court reviewing a motion under Rule 12(b)(6) is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570).

## Analysis

## I. Chapter 39A, the "North Carolina Prohibition on Transfer Fee Covenants," prohibits transfer fees covenants, not transfer fees.

In the Amended Complaint, each of plaintiff's seven causes of action are premised on the unsupported conclusion that transfer fees are prohibited under Chapter 39A. Plaintiff misreads Chapter 39A.

6

A North Carolina Superior Court has already addressed this issue and summarily rejected the very theory on which plaintiff relies. *See Fleming v. Cedar Mgmt. Grp.*, LLC, No 20-CVS-7406 (Mecklenburg Co. Super. Ct. Dec. 16, 2020).[4] However, no North Carolina appellate court has addressed this issue. Accordingly, in the absence of binding precedent, this Court must conduct its own independent analysis. *See Stahle v. CTS Corp.*, 817 F.3d 96, 98–99 (4th Cir. 2016) (articulating that when "the state's highest court has not directly addressed the issue, a federal court 'must anticipate how it would rule'").

"Questions of statutory interpretation are questions of law[.]" *First Bank v. S & R Grandview, L.L.C.,* 232 N.C. App. 544, 546, 755 S.E.2d 393, 394 (2014); *see also Sijapati v. Boente*, 848 F.3d 210, 214 (4th Cir. 2017). Under North Carolina law, "[t]he primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Dickson v. Rucho*, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013). "The best indicia of that intent are the language of the statute . . ., the spirit of the act and what the act seeks to accomplish." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547, 809 S.E.2d 853, 858 (2018). To determine legislative intent, the Court first looks at the language of the

---

[4] *See* [DE 20-1, 20-2 and 20-3] for copies of the Complaint, Motion to Dismiss and Order.

4818-9617-9421, v. 3

statute. *Estate of Wells*, 129 N.C. App. at 415-16, 500 S.E.2d at 107.

"It is well settled that '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.'" *Wilkie*, 370 N.C. at 547, 809 S.E.2d at 858 (citing *In re Estate of Lunsford*, 359 N.C. 382, 391-92, 610 S.E.2d 366, 372 (2005)).

Here, the intent of our General Assembly is abundantly clear from the plain language of the statute, and demonstrates that the Chapter 39A prohibits transfer fee *covenants*, not transfer fees. And in this case, plaintiff has failed to allege the existence of a transfer fee covenant.

## A. The clear and unambiguous statutory language of Chapter 39A prohibits "transfer fee covenants," not "transfer fees."

Plaintiff alleges that transfer fees are prohibited under Chapter 39A. The Amended Complaint is littered with references to the "Transfer Fee Prohibition Act" and conclusory allegations that Chapter 39A prohibits transfer fees. However, the plain language of the statute directly refutes these characterizations.

First, there is no act called the "Transfer Fee Prohibition Act." Rather, the Chapter on which plaintiff relies—Chapter 39A—is entitled the "North Carolina Prohibition on Transfer Fee *Covenants*." (emphasis added). Tellingly, plaintiff almost completely eschews any reference to "covenant" in

8

the Complaint.

Second, beyond the title of the act, the statutory language further evidences that Chapter 39A was intended to restrict transfer fees *covenants*. When construing a statute, the Court always looks to its purpose. *King v. Baldwin*, 276 N.C. 316, 172 S.E.2d 12 (1970). The purpose of Chapter 39A is outlined in section 1, entitled "Public Policy." It explains:

> (a) The public policy of this State favors the marketability of real property and the transferability of interests in real property *free from title defects, unreasonable restraints on alienation, and covenants or servitudes that do not touch and concern the property.*

N.C. Gen. Stat. § 39A-1(a) (emphasis added). Subsection (b) continues:

> A transfer fee *covenant* violates this public policy by impairing the marketability of title to the affected real property and constitutes an unreasonable restraint on alienation and transferability of property, regardless of the duration of the covenant or the amount of the transfer fee set forth in the covenant.

N.C. Gen. Stat. § 39A-1(b) (emphasis added).[5] The public policy of Chapter 39A to restrict transfer fee *covenants* is also evident from Section 3 which,

---

[5] Plaintiffs may cite dicta from *Wilner v. Cedars of Chapel Hill, LLC*, 241 N.C. App. 389, 773 S.E.2d 333 (2015) to support their position. However, in *Wilner*, the Court never analyzed Chapter 39A and the fee in *Wilner*, which was provided for in an agreement between plaintiffs and defendant, was exempt from Chapter 39A by another statute. *Wilner* is not authority for plaintiffs' claims in this case.

9

4818-9617-9421, v. 3

like the title of the Chapter itself, is entitled "Transfer fee covenants prohibited." N.C. Gen. Stat. § 39A-3.

Indeed, the narrow scope of Chapter 39A is further supported by Sections 3 and 4. Section 4 outlines that Chapter 39A applies to (i) any transfer fee *covenant that is recorded* after July 1, 2010; (ii) any *lien that is filed* to enforce a transfer fee covenant that is recorded after July 1, 2010, or purports to secure payment of a transfer fee that is recorded after July 1, 2010; and (iii) any *agreement* imposing a private transfer fee obligation entered into after July 1, 2010. N.C. Gen. Stat. § 39A-4(a) (emphasis added). Similarly, General Statute § 39A-3 discusses potential liability for violating the Chapter. Specifically, in subsection (b), the General Assembly provides the following individuals may be liable under the Chapter—a person who (1) records a transfer fee covenant, (2) files a lien that purports to secure payment of a transfer fee, or (3) enters into an agreement imposing a private transfer fee obligation. N.C. Gen. Stat. § 39A-3(b).

The clear statutory language demonstrates that Chapter 39A does not apply to a charge by a property management company for certification of assessments when an individual sells property within a subdivision. The charge is not compelled by a covenant, not enforced by a lien, and not covered by a private agreement between plaintiff and defendants. And, the Amended

10

Complaint is devoid of any reference to such a covenant, lien or agreement covered by Chapter 39A. Indeed, plaintiff admits "[n]o contract existed between Plaintiff and each member of the putative Class and Subclass, and Defendants." [DE 3 ¶ 187]. Rather, as outlined above, plaintiff's focus on an alleged prohibition on so-called "transfer fees" without reference to what the statute actually prohibits—recorded covenants, recorded liens, and private agreements. *See, e.g.*, [DE 3 ¶ 1 ("This action involves unlawful and unreasonable charges of real estate 'transfer fees' by [Carolinas and HomeWise].")].

Here, the language of Chapter 39A is clear and unambiguous and does not apply to the charge at issue. *Jones v. GMRI, Inc.*, 144 N.C. App. 558, 561, 551 S.E.2d 867, 870 (2001) ("When the words are unambiguous, our analysis ends there.").

## B. The legislative history further supports the plain language of the statute.

The legislative history of Chapter 39A is also informative and further demonstrates that the General Assembly intended the Chapter to restrict transfer fee covenants. In 2010, when North Carolina enacted Chapter 39A, it was one of eleven other states that passed laws that prohibited or severely restricted the use of transfer fee covenants, increasing the total number of states prohibiting or restricting transfer fee covenants to eighteen.

11

Christopher D. McEachran, *Sometimes Jumping on the Bandwagon is a Good Thing: An Analysis of North Carolina's Prohibition of Transfer Fee Covenants*, 89 N.C. L. REV. 2201, 2210 (2011).[6] These states were reacting to the increasing use of transfer fee covenants, which purportedly allowed developers to collect a percentage of the sale price from future sellers every time the property was sold over some extended period of time. *Id.* at 2201. Although there were many concerns with this practice, the principal concern was that a private third party with no legal interest in the property other than the transfer fee covenant, would receive the benefit of the covenant—some percentage of future sales—while future buyers would receive no benefit and would bear the burden of paying the fee. *Id.*

To address this concern, the General Assembly passed North Carolina Session Law 2010-32 (S.B. 35) enacting Chapter 39A. Significantly, Session Law 2010-32 was entitled "An Act To Provide That *Transfer Fee Covenants* Do Not Run With The Title To Real Property And Are Not Binding On Or Enforceable Against Any Subsequent Owner, Purchaser, Or Mortgagee."[7] S.L. 2010-32 (emphasis added). Consistent with the title and stated purpose of Chapter 39A, the Session Law further supports that the goal of Chapter

---

[6] A copy is attached as Exhibit A.
[7] A copy is attached as Exhibit B.

4818-9617-9421, v. 3

39A was to prohibit transfer fee *covenants*, which impair the marketability of title (emphasis added).[8]

The purpose of Chapter 39A is also squarely in line with the 1973 Real Property Marketable Title Act, which addresses record title to real property, and restrictions and defects in title.[9] In North Carolina General Statute § 47B-1, "Declaration of policy and statement of purpose," the General Assembly described the public policy of the state regarding real property. In particular, the statute provides:

> (1) Land is a basic resource of the people of the State of North Carolina and should be made freely alienable and marketable so far as is practicable.
>
> (2) Nonpossessory interests in real property, obsolete restrictions and technical defects in titles which have been placed on the real property records at remote times in the past often constitute unreasonable restraints on the alienation and marketability of real property.

---

[8]

> The intent of the legislation was to facilitate real estate transactions by restricting the applicability of covenants that placed arbitrary financial obligations on parties during a real estate transaction. The law is intended to address provisions in covenants requiring the payment of fees at closing, which obligation went on into perpetuity and was payable by all purchasers of a lot or unit in a planned community or condominium.

BRIAN S. EDLIN, COMMON INTEREST COMMUNITIES IN NORTH CAROLINA, 14-21 (NCBA, 2019) (2013). A copy of the relevant excerpt is attached as Exhibit C.

[9] As McEachran provided the "statute restate[d] North Carolina's public policy regarding real property transfers and specifically prohibits private [transfer fee covenants], while allowing homeowners' associations and environmental covenants to utilize the [transfer fee covenant] model to collect funds." McEachran, 89 N.C. L. REV. at 2210.

13

> (3) Such interests and defects are prolific producers of litigation to clear and quiet titles which cause delays in real property transactions and fetter the marketability of real property.
>
> (4) Real property transfers should be possible with economy and expediency. The status and security of recorded real property titles should be determinable from an examination of recent records only.

N.C. Gen. Stat. § 47B-1. This Chapter clearly deals with title defects that affect the alienability of real property. Similarly, Chapter 39A addresses the same subject matter—preserving alienability of real property. Thus, although these statutes were enacted at different times since they relate to the same subject matter, they must be construed together to ascertain legislative intent. *McCullough v. Branch Banking & Tr. Co., Inc.*, 136 N.C. App. 340, 347–48, 524 S.E.2d 569, 574 (2000).

Thus, the legislative history further supports the plain and unambiguous language of the statute and further demonstrates that Chapter 39A was intended to address transfer fee covenants that impair title. Because the charge at issue was not pursuant to a covenant, enforceable by a lien, nor pursuant to an agreement between an owner and developer for a fee to be paid upon each transfer of the property[10], it is simply not within the scope of Chapter 39A.

---

[10] *See, e.g., Wilner*, 241 N.C. App. 389, 773 S.E.2d 333.

14

**II.    The certification charge at issue is neither a fee or charge payable upon the transfer of an interest in real property, nor payable for the right to make or accept such a transfer.**

Plaintiff's Amended Complaint also fails because the charge at issue is not a "transfer fee" as defined in the statute. North Carolina General Statute § 39A-2 includes three definitions—(1) defines "Transfer", (2) defines "Transfer fee"[11] and (3) defines "Transfer fee covenant." N.C. Gen. Stat. § 39A-2. Section 39A-2(2) defines "Transfer fee" as:

> a fee or charge payable upon the transfer of an
> interest in real property or payable for the right to
> make or accept such transfer . . . .

N.C. Gen. Stat. § 39A-2. Thus, a transfer fee is "payable upon the transfer of an interest in real property" *or* "payable for the right to make or accept such transfer." The Amended Complaint includes the conclusory statement that "[w]hen Defendants provide statements of unpaid assessments upon the transfer of an ownership interest in real property . . . , Defendants charge Resale Fees payable upon the transfer of the interest in real property or payable for the right to make or accept such transfer." [DE 3 ¶ 48]. Despite this conclusory statement, the factual allegations show that a charge to prepare the certification of assessments does not fall within either of those buckets.

---

[11] The inclusion of the definition of "Transfer fee" would not necessarily mean transfer fees are prohibited under the statute. If it did, then the same argument could be made for "transfer," which would obviously lead to an absurd result.

4818-9617-9421, v. 3

**A.** **The charge for certification statements is not payable upon the transfer of the interest in real property.**

The statement of unpaid assessments is not a fee that is payable upon the transfer of an interest in real property. Black's Law Dictionary defines "payable" as "that is to be paid." PAYABLE, Black's Law Dictionary (11th ed. 2019). Here, plaintiffs allege "Defendants charge a fee for the statement of unpaid assessments to Plaintiff . . . ." [DE 3 ¶ 59]; *see also* [DE 3 ¶ 122 ("The Resale Fees are charged by Defendants for the preparation of a statement of unpaid assessments and other services."); ¶ 127 ("The Resale Fees were charged by Defendant for providing the statement of unpaid assessments . . . .")]]. Thus, it is payable based on the preparation of the statement / certification, not on the transfer of the property. If plaintiff's interpretation is accepted, this would result in any payment at closing being a transfer fee if not specifically excepted in Chapter 39A-2(2)(a) – (j).

**B.** **The charge is not payable for the right to make or accept such a transfer.**

The charge to prepare the statement of unpaid assessments is also not required to close on the sale of real estate. Plaintiff may attempt to fall back on his allegation that:

> *For all practical purposes*, a homeowner whose home is part of an OA cannot sell the home without a statement of unpaid assessments.

16

[DE 3 ¶¶ 5, 50 (emphasis added)]. However, these allegations fall short of establishing that the charge to prepare the assessments is payable *for the right* to make or accept such a transfer. Plaintiff may also try to point his allegation that:

> . . . Plaintiff's closing attorney would not have certified to Plaintiff's title insurance company that the title was free and clear of any OA liens for assessments absent a statement of unpaid assessments, and a lender would not have disbursed loan funds absent a statement of unpaid assessments demonstrating a zero balance.

[DE 3 ¶ 55]. Despite the inference, neither title insurance nor financing are legally required for the transfer of title to real estate. At best, these allegations would permit the conclusion that (1) if there were a title insurance policy, there may be an exception in a policy for unpaid assessments absent the certification at issue and (2) a lender in certain circumstances may not disburse loan funds. But the absence of an assessment certification would not prohibit the transfer of title from a seller to a buyer. A buyer could accept a seller's indemnity for unpaid assessments or a title company could insure without exception for unpaid assessments based upon adequate indemnity, and a buyer who pays cash or accepts owner financing is not constrained by the requirements of a third-party lender.

Further, there is no requirement that the charges be paid for title to

17

transfer. For example, if the closing attorney was instructed not to pay the charges, the closing could still proceed, and title would transfer from the seller to the buyer.

### C. The exception does not create a definition where none exists.

Plaintiff attempts to fit a square peg in a round hole by pointing to the exception in the statutory language. [DE 3 ¶ 83]. Specifically, plaintiff relies on the exception for "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. 47(c)-3-102(12)." N.C. Gen. Stat. § 39A-2(2)(h). Based on this definition, plaintiff alleges that "[t]he limitation of the fee to a 'reasonable' amount necessarily means that any *un*reasonable fee is a transfer fee within the definition of G.S. § 39A-2." [DE 14, ¶ 84].

Presumably, plaintiff's argument will focus on this exception and the case law which provides courts should construe the statute so that "none of its provisions shall be rendered useless or redundant." *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981). However, as discussed above, plaintiff's argument ignores the express definition of "transfer fee", which for the reasons discussed above would not encompass the certification charge about which plaintiff complains. Plaintiff's

18

cannot create a definition where one clearly does not exist.

### D. Even if the charges were somehow a "transfer fee", the charge squarely falls under an exception.

The General Assembly expressly excluded from the definition of "transfer fee" "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. 47(c)-3-102(12)." N.C. Gen. Stat. § 39A-2(2)(h). Plaintiff may try to save his claims by pointing to his subjective allegations the fee was "arbitrary" or his conclusory allegations that the amount of the charge is "unreasonable." *See* [DE 3 ¶¶ 8, 56, 61]; *see also* [DE 3 ¶ 2 ("exorbitant 'transfer fees'")]. However, plaintiff's argument ignores that the amounts fall well under the statutorily permissible amounts set forth in N.C. Gen. Stat. §§ 47C-3-102(12a) and § 47F-3-102(13a).

At the time of the charges at issue, North Carolina General Statute § 47C-3-102(12) provided an owners' association may "[i]mpose reasonable charges for the preparation and recordation of amendments to the declaration or resale certificates required by G.S. 47C-4-109, or statements of unpaid assessment." Similarly, North Carolina General Statute § 47F-3-102(13) provided an owners' association may "[i]mpose reasonable charges in connection with the preparation and recordation of documents, including, without limitation, amendments to the declaration or statements of unpaid

19

4818-9617-9421, v. 3

assessment."

Effective July 2, 2020, the legislature amended North Carolina General Statute §§ 47C-3-102 and § 47F-3-102 in Session Law 2020-90, which in pertinent part, was titled "TO CLARIFY THE AUTHORITY OF OWNERS ASSOCIATIONS TO IMPOSE CHARGES FOR STATEMENTS OF UNPAID ASSESSMENTS." The General Assembly divided North Carolina General Statute §§ 47C-3-102(12) and 47F-3-102(13) into two sections and explicitly addressed what is reasonable. Specifically, North Carolina General Statute § 47C-3-102 now provides:

> (12) Impose reasonable charges for the preparation and recordation of amendments to the declaration or resale certificates required by G.S. 47C-4-109.

> (12a) Impose reasonable charges in connection with the preparation of statements of unpaid assessments, which must be furnished within 10 business days after receipt of the request, in an amount not to exceed two hundred dollars ($200.00) per statement or request, and an additional expedite fee in an amount not to exceed one hundred dollars ($100.00) if the request is made within 48 hours of closing, all of which charges may be collected by the association, its managers, or its agents.

And, North Carolina General Statute § 47F-3-102 now provides:

> (13) Impose reasonable charges in connection with the preparation and recordation of documents, including, without limitation, amendments to the declaration.

20

> (13a) Impose reasonable charges in connection with the preparation of statements of unpaid assessments, which must be furnished within 10 business days after receipt of the request, in an amount not to exceed two hundred dollars ($200.00) per statement or request, and an additional expedite fee in an amount not to exceed one hundred dollars ($100.00) if the request is made within 48 hours of closing, all of which charges may be collected by the association, its managers, or its agents.

*See also* N.C. Sess. Laws 2020-90.

Therefore, under the amendment, an owners' association may charge up to $200.00 in connection with preparation of statement of unpaid assessments and up to $100.00 if the request is made within 48 hours of closing. Although plaintiff disregards the itemized accounting of the charges, it is clear from the Amended Complaint that Carolinas only charged $169.00 for the Resale Demand and $65.00 for the rush. *Salami v. JPMorgan Chase Bank, N.A.*, 1:18CV794, 2019 WL 2526467 *4 (M.D.N.C. 2019) (courts are not bound by a complaint's unwarranted inferences, unreasonable conclusions, or arguments). Without a doubt, these amounts fall well within the amounts expressly authorized under the statute.

Plaintiff may argue that the amendments were passed after the charges at issue and therefore have no bearing on this matter. However, an amendment to a statute can be either altering or clarifying. *Ferrell v. Department of Transportation*, 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993).

21

An altering amendment modifies a statute's substantive meaning and only applies prospectively, where as a clarifying amendment does not alter the original meaning of the statutes and applies retroactively. *See Ray v. Department of Transportation*, 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012). A review of the 2020 Amendment demonstrates that it was clarifying, not altering, and therefore the amounts authorized by § 47C-3-102 and 47F-3-102 would apply to the charges at issue.

"[W]hen a statute that fails *expressly* to address a particular point is subsequently amended to address that point, the amendment is more likely to be clarifying than altering." *Ferrell*, 334 N.C. at 659, 435 S.E.2d at 315 (emphasis added). Prior to the 2020 Amendment, neither § 47C-3-102 nor 47F-3-102 expressly defined or otherwise offered any guidance as to what would be deemed "reasonable." The General Assembly filled in this gap by adding specific language regarding what an owners' associations could charge to prepare statements of unpaid assessments. *See* N.C. Gen. Stat. §§ 47C-3-102(12a), 47F-3-102(13a).

Thus, even if the charge for the statement of unpaid assessment was somehow "payable upon the transfer of an interest in real property" *or* "payable for the right to make or accept such transfer", Carolinas' charges – both for preparation of the statement of unpaid assessments and the rush fee

4818-9617-9421, v. 3

– was reasonable and therefore squarely fall within the exception articulated in (h).

## III. Since there can be no violation of Chapter 39A, plaintiff's remaining causes of action, which are premised on such a violation, should be dismissed.

Plaintiff's remaining six claims for relief are premised on a purported violation of Chapter 39A as set forth in plaintiff's first cause of action. Because, for the reasons discussed above, plaintiff has not pled facts showing a violation of Chapter 39A because the charge for preparation of a statement of assessments is not a transfer fee covenant or a transfer fee, plaintiff's other claims must fail.

## IV. Plaintiff's Unfair and Deceptive Trade Practices Act claim and Unjust Enrichment claim fail for other reasons.

### A. Plaintiff's claim under the Unfair and Deceptive Trade Practices Act is duplicative of his North Carolina Debt Collection Act claim.

Plaintiff's second cause of action alleges that Carolinas violated the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiff also asserts a cause of action alleging that Carolinas violated the North Carolina Debt Collection Act. Claims under the North Carolina Debt Collection Act and the Unfair and Deceptive Trade Practices Act are mutually exclusive; a complaint that alleges the former necessarily excludes the latter. *Costin v. Ally Bank Corp.*, 2014 WL 130527, at *1 (E.D.N.C. Jan. 13, 2014) ("Because

23

plaintiff has also alleged a complaint under the NCDCA, the Court must dismiss plaintiff's UDTPA claim as her exclusive remedy is found under the NCDCA.").

Furthermore, plaintiff has failed to allege any conduct that is "unfair" or "deceptive" within the meaning of the Act. *See, e.g.*, *Sullivan v. Lab. Corp. of Am. Holdings, Inc.*, No. 1:17cv193, 2018 WL 1586471, at *4 (M.D.N.C. Mar. 28, 2018) (citing *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 228-29 (N.C. 2013)) (dismissing complaint and noting that a claim of excessive price alone does not support claim under Unfair and Deceptive Trade Practices Act). Moreover, as with his other claims, plaintiff's claim of unfair and deceptive trade practices is premised on violations of Chapter 39A.

## B. There is no breach of duty that would support a tort of negligent misrepresentation.

The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. *Kindred of N. Carolina, Inc. v. Bond*, 160 N.C. App. 90, 584 S.E.2d 846 (2003). A breach of duty that gives rise to a claim of negligent misrepresentation has been defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for

24

pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Rountree v. Chowan Cty.*, 252 N.C. App. 155, 160, 796 S.E.2d 827, 831 (2017) (citing *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 534, 537 S.E.2d 237, 241 (2000)).

Plaintiff has failed to allege any facts to support a violation of a duty imposed by operation of law. This dispute arises out of charges by Carolinas upon a request for a statement of unpaid assessments as set forth on an invoice to a closing attorney. [DE 3 Ex C]. While related to a residential real estate closing, this is not information supplied to plaintiff for the guidance of plaintiff in a business transaction.

## C. Plaintiff has failed to state a plausible claim for unjust enrichment.

To plead unjust enrichment, a plaintiff must allege facts demonstrating: "(1) one party conferred a benefit upon the other party; (2) the benefit was not 'conferred officiously ...'; (3) the benefit was not gratuitous; (4) the benefit was measureable; and (5) the defendant consciously accepted the benefit." *Levy v. Infilaw Corp.*, No. 3:17-CV-00026-GCM, 2017 WL 3573825, at *4 (W.D.N.C. Aug. 17, 2017) (citing *Law Offices of John L. Juliano, P.C., v. Jensen*, 673 Fed. Appx. 291, 2016 WL 7240176, at *3 (4th Cir. Dec. 15, 2016)

25

4818-9617-9421, v. 3

(unpublished)). To invoke the unjust enrichment doctrine more must be shown than that one party voluntarily benefited another or his property. *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984).

As with the claim in *Levy*, plaintiff has not alleged Carolinas actively recruited or solicited his payment of the charges at issue. In *Homeq v. Watkins*, 154 N.C. App. 731, 733, 572 S.E.2d 871, 873 (2002), the North Carolina Court of Appeals recognized that:

> Not every enrichment of one by the voluntary act of another is unjust. Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value.

Further, Carolina's conduct is not unjust because plaintiff received the benefit for which he paid, that is the statement of unpaid assessments. *See Levy*, 2017 WL 3573825, at *5. For these reasons, plaintiff's unjust enrichment claim fails. Any services he received from Carolinas was provided at his request without any solicitation.

### D. Civil Conspiracy is not an independent claim.

Plaintiff's last claim for relief is labeled "civil conspiracy." [DE 3, Seventh Claim for Relief]. However, there is no separate civil action for civil conspiracy in North Carolina. <u>Dove v. Harvey</u>, 168 N.C. App. 687, 690, 608

4818-9617-9421, v. 3

S.E.2d 798, 800 (2005). Civil conspiracy is premised on the underlying act. *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011). As discussed above, Carolinas is entitled to dismissal of the underlying claims and therefore, plaintiff's claim for civil conspiracy must also fail.

## Conclusion

In sum, for the reasons stated more fully herein, Carolinas is entitled to dismissal of the claims against it.

This the 22nd day of February, 2021.

/s/Laura E. Dean
Richard T. Boyette / NC Bar No 7623
Laura E. Dean / NC Bar No 43775
CRANFILL SUMNER LLP
Post Office Box 27808
Raleigh, North Carolina 27611
Phone:      (919) 828-5100
Facsimile:  (919) 828-2277
Email:      rdb@cshlaw.com
            ldean@cshlaw.com
*Attorneys for Defendant FirstService*
*Residential Carolinas, Inc.*

27

4818-9617-9421, v. 3

## CERTIFICATE OF WORD COUNT AND
## COMPLIANCE WITH LR 7.3(d)

I hereby certify pursuant to Local Rule 7.3(d)(1) of the Middle District of North Carolina, that the foregoing Memorandum of Law complies with the 6,250 word limit according to the word processing system used to process this brief.

This the 22nd day of February, 2021.

/s/Laura E. Dean
LAURA E. DEAN
NC State Bar 43775
CRANFILL SUMNER LLP
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone:  (919) 828-5100
Facsimile:  (919) 828-2277
Email:    ldean@cshlaw.com

28

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-00056

| | |
|---|---|
| LOGAN DERNOSHEK, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FIRSTSERVICE RESIDENTIAL, INC., FIRSTSERVICE RESIDENTIAL CAROLINAS, INC. and NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 22, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system, which will send notification of this filing and an electronic copy of same to all counsel of record registered with the CM/ECF system, and I hereby certify that I have thereby electronically served the document upon all parties.

/s/ Laura E. Dean
LAURA E. DEAN
N.C. State Bar No. 43775
CRANFILL SUMNER LLP
Post Office Box 27808
Raleigh, North Carolina 27611
Phone:       (919) 828-5100
Facsimile:   (919) 828-2277
Email:       ldean@cshlaw.com
*Attorneys for Defendant FirstService*
*Residential Carolinas, Inc.*

29

4818-9617-9421, v. 3